UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. VACCARO, M.D. P.A.<br><br>                       Plaintiff,<br><br>-against-<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>                       Defendant. | Index No.: 19-19664<br><br>**COMPLAINT** |

Plaintiff, John J. Vaccaro, M.D. P.A. ("Plaintiff"), on assignments from Roman A., Anaum A., Sophie B., and Hamid Z., by and through his attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against United Healthcare Insurance Company ("Defendant"), alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a New Jersey medical practitioner registered to do business in the State of New Jersey with a principal place of business at 202 Route 37, West Suite 1, Toms River, New Jersey 08755.

2. Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policy at issue was provided to the assignor's employer and is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

1

## FACTUAL BACKGROUND

4. Plaintiff is a medical provider who specializes in plastic surgery and often treats patients in emergency situations.

5. On April 23, 2018, Plaintiff performed emergency surgery on Roman A. ("Patient 1") in Hackensack University Medical Center. (*See*, **Exhibit A**, attached hereto.)

6. Patient's 1's emergency treatment related to injuries he sustained in an accident while riding a vespa on a highway. *Id.*

7. At the time of Plaintiff's treatment of Patient, Patient was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

8. Patient 1 assigned his health insurance rights and benefits to Plaintiff. (See, **Exhibit B**, attached hereto.)

9. After treating Patient 1, Plaintiff submitted a Health Care Financing Administration ("HCFA") medical bill to Defendant demanding payment for the performed treatment in the total amount of $14,225.00. (*See*, **Exhibit C**, attached hereto.)

10. As an out-of-network provider, Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's members.

11. On or around October 22, 2018, Defendant issued payment for Plaintiff's treatment in the total amount of $6,000.00. (*See*, **Exhibit D**, attached hereto.)

12. Defendant represented in its explanation of benefits that the remaining $8,225.00 in Plaintiff's charges were neither Defendant's nor Patient 1's responsibility, even though Plaintiff never agreed to any such arrangement. *Id.*

13. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as an underpayment under the terms of Patient 1's insurance plan.

14. However, Defendant failed to issue any additional reimbursement in response to Plaintiff's appeals.

15. On or around January 15, 2017, Plaintiff performed emergency surgery on Anaum A. ("Patient 2"), a two-year-old female who required repair and reconstruction of the dermis after falling on the sidewalk. (*See*, **Exhibit E**, attached hereto.)

16. Patient 2 assigned her health insurance rights and benefits to Plaintiff. *Id*. (*See*, **Exhibit F**, attached hereto.)

17. After treating Patient 2, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $6,964.00 (*See*, **Exhibit G**, attached hereto.)

18. In response to Plaintiff's claim, Defendant issued an explanation of benefits indicating an "allowed amount" of $1,102.51. (*See*, **Exhibit H**, attached hereto.)

19. However, Defendant did not issue any payment to Plaintiff, and indicated that Plaintiff's full charge of $6,964.00 was Patient's responsibility. *Id*.

20. While not entirely clear, it appears from Defendant's explanation of benefits that the allowed amount of $1,102.51 was applied towards Patient 2's deductible, and Plaintiff's remaining charges of $5,861.49 were simply not covered. *Id*.

21. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement determination as an underpayment under the terms of Patient 2's insurance plan.

22. Defendant failed to increase its reimbursement determination in response to Plaintiff's appeals.

23. On December 30, 2017, Plaintiff performed emergency surgery on Sophie B. ("Patient 3") who sustained injuries to her face and hand after she was savagely attacked by an animal. (*See*, **Exhibit I**, attached hereto.)

24. Patient 3 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit J**, attached hereto.)

25. After treating Patient 3, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $26,867.00. (*See*, **Exhibit K**, attached hereto.)

26. On or around February 5, 2018, Defendant issued payment in the amount of $5,115.00. Defendant represented in its explanation of benefits that the remaining $21,752.00 in Plaintiff's charges were neither Defendant's nor Patient 3's responsibility even though Plaintiff never agreed to any such arrangement. (*See*, **Exhibit L**, attached hereto.)

27. Plaintiff submitted multiple internal appeals to Defendant, challenging Defendant's reimbursement as an underpayment under the terms of Patient 3's insurance plan.

28. However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

29. On January 31, 2018, Plaintiff performed emergency surgery on Hamid Z. ("Patient 4") after his finger was crushed by a desk he was moving. (*See*, **Exhibit M**, attached hereto.)

30. Patient 4 assigned his health insurance rights and benefits to Plaintiff. (*See*, **Exhibit N**, attached hereto.)

31. After treating Patient 4, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $30,944.64. (*See*, **Exhibit O**, attached hereto.)

32. On or around April 30, 2018, Defendant issued payment in the amount of $4,434.44, and applied an additional $1,108.60 towards Patient 4's copayment liability. (*See*, **Exhibit P**, attached hereto.)

33. Defendant represented in its explanation of benefits that the remaining $25,401.60 in Plaintiff's charges were neither Defendant's nor Patient 4's responsibility, even though Plaintiff never agreed to any such arrangement. *Id*.

34. Plaintiff submitted multiple internal appeals challenging Defendant's reimbursement as an underpayment under the terms of Patient 4's insurance plan.

35. However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

36. Upon information and belief, the insurance plans for Patient 1, Patient 2, Patient 3 and Patient 4 limit the members' cost-sharing for emergency treatment to copayment, coinsurance, and deductible charges.

37. Upon information and belief, under the terms of the insurance plans of Patient 1, Patient 2, Patient 3, and Patient 4, members who undergo out-of-network emergency treatment are not responsible for any additional cost-sharing than they would be had they undergone such treatment with an in-network provider.

38. The total combined amount charged for Plaintiff's emergency treatment of the four Patients referenced above was 79,000.64.

39. When accounting for all the above referenced claims, the total amount applied towards member deductible, copayment, and coinsurance liability was $2,211.11.

40. When accounting for all the above referenced claims, the total amount paid by Defendant was $15,549.44.

41. When accounting for all the above referenced claims, the total amount Defendant should have paid under the applicable insurance plans was $76,789.53.

42. Plaintiff has thus been damaged in the total amount of $61,240.09.

43. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## COUNT ONE

### FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 of the Complaint as though fully set forth herein.

45. Plaintiff avers this Count to the extent ERISA governs this dispute.

46. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

47. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from each Patient.

48. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

49. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

6

50. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 of the Complaint as though fully set forth herein.

52. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

53. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

54. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

55. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents

and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

56. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

57. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

58. Here, when Defendant acted to partially deny payment for the medical bill at issue, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

59. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order directing Defendant to pay Plaintiff $61,240.09;
B. For an Order directing Defendant to pay Plaintiff all benefits Roman A., Anaum A., Sophie B., and Hamid Z. would be entitled to under the applicable insurance plans or policies administered by Defendant;
C. For compensatory damages and interest;
D. For attorney's fees and costs of suit; and
E. For such other and further relief as the Court may deem just and equitable.

Dated: New York, NY
October 31, 2019

                               SCHWARTZ SLADKUS
                               REICH GREENBERG ATLAS LLP
                               *Attorneys for Plaintiff*

                     By:     /s/ Michael Gottlieb
                               Michael Gottlieb
                               444 Madison Avenue
                               New York, NY 10022
                               (212) 743-7054